UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SALESH P., <br>     Petitioner, <br> v. <br> POLLY KAISER, et al., <br>     Respondents. | Case No. 22-cv-03018-DMR <br><br> **ORDER ON PETITION FOR WRIT OF HABEAS CORPUS AND MOTION FOR TEMPORARY RESTRAINING ORDER** <br><br> Re: Dkt. Nos. 1, 11 |

Petitioner Salesh P. is a noncitizen from Fiji who is currently in Immigration and Customs Enforcement ("ICE") custody pending the conclusion of his removal proceedings. Respondents are Polly Kaiser, Acting Field Office Director of ICE's San Francisco Field Office; Tae D. Johnson, Acting Director of ICE; Alejandro Mayorkas, Secretary of the Department of Homeland Security ("DHS"); and Merrick B. Garland, the United States Attorney General.

On May 23, 2022, Petitioner filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241 in which he asks the court to order his release from custody or to direct Respondents to provide him with an individualized custody hearing at which "the government must establish by clear and convincing evidence that [he] presents a risk of flight or danger, even after consideration of alternatives to detention[.]"[1] [Docket No. 1 ¶¶ 5, 6.] The parties filed a stipulated briefing schedule on Respondents' return and motion to dismiss, which the court entered on June 2, 2022. [Docket No. 11.] On October 3, 2022, after the habeas petition and motion to dismiss were fully briefed, Petitioner filed a motion for a temporary restraining order ("TRO") seeking to enjoin his continued detention without a custody hearing. [Docket No. 21.]

This matter is suitable for resolution without a hearing. Civ. L.R. 7-1(b). For the

---

[1] Individualized custody hearings are also known as bond hearings. These terms are used interchangeably.

following reasons, the motion to dismiss is denied. The habeas petition is granted in part and denied in part, and Petitioner's motion for a TRO is denied as moot.

## I.     BACKGROUND

Petitioner was born in Fiji in 1971. He came to the United States as a lawful permanent resident in 1978, at the age of six. Petition ¶ 19. He is a queer, bisexual Indo-Fijian man. *Id*. During Petitioner's childhood and adolescence, "he witnessed and experienced extreme violence." He began using drugs and alcohol and joined a gang, acquiring a number of gang tattoos. *Id*. at ¶¶ 20-21. In 1995, Petitioner was convicted of second-degree murder in California state court and was sentenced to 15 years to life. *Id*. at ¶¶ 18, 21; Ex. A (Notice to Appear, "NTA") at 1. While in prison, Petitioner participated in therapy and was diagnosed with Post Traumatic Stress Disorder ("PTSD"), depression, and anxiety. Petition ¶ 21. He also "ended all gang involvement" and participated in drug and alcohol recovery groups. *Id*.

The California Board of Parole Hearings ordered Petitioner's release from prison in April 2021. The Governor of California allowed the decision to stand and Petitioner's release date was set for August 19, 2021. *Id*. at ¶¶ 22-23. On August 16, 2021, DHS charged Petitioner as removable pursuant to 8 U.S.C. § 1227(a)(2)(A)(iii) for having been convicted of an aggravated felony and issued a Notice to Appear. NTA. On August 19, 2021, Petitioner was transferred to ICE detention. He has been in ICE's custody at the Golden State Annex in McFarland, California since August 19, 2021. *Id*. at ¶¶ 23, 24; Petition Ex. B. At the time he filed the instant petition, he had been detained for nine months.

### A.     Removal Proceedings

On December 20, 2021, Petitioner moved to terminate the removal proceedings. An immigration judge ("IJ") denied the motion on December 28, 2021. Petition ¶ 28. Petitioner also applied for deferral of removal under the Convention Against Torture ("CAT") based on his fears that "he will be targeted and tortured in Fiji due to his sexual orientation, his criminal conviction, his tattoos and former gang affiliation, his long absence from Fiji, and his potential for drug relapse in Fiji." *Id*. at ¶ 29. Petitioner and a country conditions expert testified at a hearing on the merits of his claim for relief on March 29, 2022. *Id*. The IJ denied the application for protection

under the CAT on May 13, 2022. *Id*. at ¶ 30. Petitioner appealed the decision to the Board of Immigration Appeals ("BIA"). On October 28, 2022, the BIA dismissed the appeal in part and remanded the request for deferral of removal to the IJ "to reconsider [Petitioner's] aggregate risk of future torture." [Docket No. 25-1 (Boyd Decl. Nov. 3, 2022) ¶ 6, Ex. A (BIA Decision) at 2.]

### B. Requests for Release

Petitioner has made four release requests. First, on September 26, 2021, he filed a request for release in part due to his mother's sickness with COVID-19. ICE denied the request on September 28, 2021. Petitioner's mother died the same day. Petition ¶ 32.

Petitioner filed a second request for release on December 1, 2021 with additional evidence. ICE denied the request on December 10, 2021. *Id*. at ¶ 33.

Petitioner filed his third request for release on January 27, 2022 in part due to an ongoing outbreak of COVID-19 at the detention facility. ICE denied the request on February 7, 2022. *Id*. at ¶ 34.

On February 16, 2022, Petitioner filed his fourth request for release and included "additional details about his release plan and community support," including reentry assistance. The request was denied on March 15, 2022. *Id*. at ¶ 35.

### C. Relevant Details of Petitioner's Confinement

As noted, Petitioner is confined at Golden State Annex ("GSA"), which is in McFarland, California. [Docket No. 14 (Gonzalez Decl. Jun. 13, 2022) ¶¶ 4, 6.] GSA is managed by The GEO Group, Inc. ("GEO"), an independent contractor. The warden, known as the "Facility Administrator," is a GEO employee based in McFarland. *Id*. at ¶ 4. McFarland is in Kern County, which is in the Eastern District of California. MTD 3.

DHS Acting Assistant Field Office Director Nancy Gonzalez is based in Bakersfield, California. She is assigned to the Bakersfield Sub-Office within ICE's Enforcement and Removal Operations, San Francisco Field Office. Gonzalez Decl. ¶ 1. The Bakersfield Sub-Office is responsible for oversight of noncitizens detained at two facilities, including GSA. Gonzalez states that she supports the Deputy Field Office Director and Field Office Director "in managing operations and procedures of enforcement and removal activity" throughout her area of

responsibility, which includes "providing oversight and supervision of Supervisory Detention and Deportation Officers and their staff who maintain the docket management of ICE detainees" at GSA. *Id*. According to Gonzalez, she and her staff "directly liaise with the GSA Facility Administrator and other GEO personnel regarding the detainees at GSA." *Id*. at ¶ 5. Her direct line supervisor, Acting Deputy Field Office Director Moises Becerra, is based in Fresno. He is responsible for ICE immigration enforcement operations within nine counties, including Kern County. Becerra directly reports to Respondent Polly Kaiser, Acting Field Office Director ("FOD") of the San Francisco Field Office. *Id*. at ¶ 7. Gonzalez states that Kaiser is responsible for the management and direction of all enforcement and removal operations and law enforcement operations within the boundaries of the "San Francisco Area of Responsibility," which encompasses offices in seven cities in California, as well as Hawaii, Guam, and the Northern Mariana Islands. *Id*. at ¶ 8.

### D. The Habeas Petition

On May 23, 2022, Petitioner filed a petition for writ of habeas corpus in which he asks the court to order his release from custody or to direct Respondents to provide him with an individualized custody hearing. He asserts a single claim for relief: that his prolonged detention without a hearing violates the Fifth Amendment's Due Process Clause.

## II. JURISDICTION OVER THE PETITION

Petitioner filed his habeas petition pursuant to 28 U.S.C. § 2241, which allows "the Supreme Court, any justice thereof, the district courts and any circuit judge" to grant writs of habeas corpus "within their respective jurisdictions." 28 U.S.C. § 2241(a). A district court may grant a writ of habeas corpus when the petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Here, Petitioner asserts that his continued detention violates his due process rights under the Fifth Amendment of the United States Constitution. He does not ask this court to defer removal. *See* Petition ¶¶ 1-6, 8. The Ninth Circuit has held that "district courts retain jurisdiction under 28 U.S.C. § 2241 to consider habeas challenges to immigration detention that are sufficiently independent of the merits of [a] removal order[.]" *Lopez-Marroquin v. Barr*, 955 F.3d 759 (9th Cir. 2020) (citing *Singh v. Holder*,

4

638 F.3d 1196, 1211-12 (9th Cir. 2011)).  Therefore, the court has subject matter jurisdiction pursuant to Section 2241.  *See, e.g., Hilario Pankim*, No. 20-cv-02941-JSC, 2020 WL 2542022, at *4 (N.D. Cal. May 19, 2020) (concluding that court had subject matter jurisdiction over Section 2241 petition where noncitizen detainee argued his continued detention violated his constitutional rights).

Nonetheless, Respondents argue that the habeas petition should be dismissed because "jurisdiction lies in only one district: the district of confinement," which is the United States District Court for the Eastern District of California.  [Docket No. 13 (Mot. to Dism. and Return to Petition, "MTD/Return") 2, 7 (quoting *Lopez-Marroquin*, 955 F.3d at 759).]  Relatedly, Respondents argue that the warden of GSA, whom they do not identify, is the proper respondent for Petitioner's habeas petition, not FOD Kaiser.  As an alternative to dismissal, Respondents argue that the court should transfer the petition to the Eastern District.  They primarily rely on *Rumsfeld v. Padilla*, 542 U.S. 426, 443 (2004), and *Lopez Marroquin*, 955 F.3d at 759. MTD/Return 5-7, 17.

In *Padilla*, the Supreme Court examined whether Jose Padilla, a United States citizen detained by the Department of Defense at a military brig in South Carolina, properly filed a Section 2241 habeas petition in the Southern District of New York.  542 U.S. at 430.  Padilla was originally taken into custody in Chicago and transported to New York, where he was held in federal criminal custody pursuant to a material witness warrant issued by the Southern District of New York.  After then-Secretary of Defense Donald H. Rumsfeld designated Padilla as an "enemy combatant," he was taken into military custody and moved to South Carolina.  *Id*. at 430-31. Shortly thereafter, Padilla filed a Section 2241 habeas petition in the Southern District of New York naming former President George Bush; Rumsfeld; and Melanie A. Marr, the commander of the military brig, as respondents.  *Id*. at 432.

The government moved to dismiss, arguing in part that Marr was the only proper respondent and that the court lacked jurisdiction over her because she was located outside the Southern District of New York.  The district court denied the motion to dismiss, holding that Rumsfeld was a proper respondent to the petition, but found in the government's favor on the

5

merits of the petition. The Second Circuit agreed that Rumsfeld was properly named as a respondent and reversed on the merits, ordering Rumsfeld to release Padilla from military custody. *Id*. at 432-33.

At the outset of its analysis, the Supreme Court clarified that the term "jurisdiction" as used in Section 2241(a) and in its opinion was "not in the sense of subject-matter jurisdiction of the District Court." *Id*. at 434 n.7; *see also id*. at 451-52 ("the question of the proper location for a habeas petition is best understood as a question of personal jurisdiction or venue . . . objections to the filing of petitions based on those grounds can be waived by the Government.") (Kennedy, J., concurring). The Court then used a two-step analysis to determine whether the Southern District of New York had jurisdiction over Padilla's habeas petition. First, the Court noted that pursuant to statute, "the proper respondent to a habeas petition is 'the person who has custody over [the petitioner].'" *Id*. at 434 (quoting 28 U.S.C. § 2242). The Court discussed the longstanding "immediate custodian rule," which is that "in habeas challenges to present physical confinement— 'core challenges'—the default rule is that the proper respondent is the warden of the facility where the prisoner is being held, not the Attorney General or some other remote supervisory official." *Id*. at 435. It then applied the immediate custodian rule to Padilla's habeas petition and concluded that the only proper respondent was Marr, who was "the equivalent of the warden" at the military brig where he was being held. *Id*. at 436-41. The Court expressly declined to resolve the question of the proper respondent "to a habeas petition filed by [a noncitizen] detained pending deportation," an issue that had divided lower courts. *Id*. at 435 n.8.

The Court next examined whether the Southern District of New York had jurisdiction over Marr and concluded that it did not. *Id*. at 442. It held that "for core habeas petitions challenging present physical confinement, jurisdiction lies in only one district: the district of confinement." *Id*. at 443 (discussing 28 U.S.C. § 2241(a) and rejecting the claim that "jurisdiction will lie in any district in which the respondent is amenable to service of process"); *see also id*. at 444 ("[i]n habeas challenges to present physical confinement . . . the district of confinement is synonymous with the district court that has territorial jurisdiction over the proper respondent").

Here, Respondents contend that in *Lopez-Marroquin*, 955 F.3d at 759, the Ninth Circuit

"conclusively confirmed in a published, precedential decision" that the district-of-confinement rule discussed in *Padilla* applies "to challenges to immigration detention." MTD/Return 7. Not so. *Lopez-Marroquin* is a three-paragraph opinion that construed a noncitizen's emergency motion to remand pursuant to the All Writs Act as a petition for a writ of habeas corpus. Citing *Padilla*, the court transferred the matter to the Southern District of California. *Id*. at 760 (citing *Padilla*, 542 U.S. at 443 ("[t]he plain language of the habeas statute . . . confirms the general rule that for core habeas petitions challenging present physical confinement, jurisdiction lies in only one district: the district of confinement.")). The opinion does not address the question the Supreme Court left open in *Padilla*; i.e., who is the proper respondent in a habeas petition filed by a detained noncitizen pending deportation, and does not analyze the Section 2241 jurisdiction question at issue in this case (i.e., where is the proper venue for such a petition).

"Courts in this district repeatedly have held, both before and since *Lopez-Marroquin*, that *Padilla* does not extend to cases such as this one where the immediate custodian lacks any actual authority over the immigrant detainee." *Domingo v. Barr*, No. 20-cv-06089-YGR, 2020 WL 5798238, at *2 (N.D. Cal. Sept. 29, 2020) (collecting cases); *accord Perera v. Jennings*, No. 21-cv-04136-BLF, 2021 WL 2400981, at *2 (N.D. Cal. June 11, 2021) (finding Field Office Director of ICE's San Francisco Field Office was the proper respondent where petitioner was detained at GSA; collecting cases). *See also Meneses v. Jennings*, No. 21-CV-07193-JD, 2021 WL 4804293, at *2 (N.D. Cal. Oct. 14, 2021) ("The government construes *Lopez-Marroquin v. Barr*, 955 F.3d 759 (9th Cir. 2020), as confirming the ostensible bright-line [district of confinement] rule in *Padilla*, but *Padilla* said no such thing. *Lopez-Marroquin* simply cited *Padilla* without any gesture at resolving the question the Supreme Court left open, and so does not advance the government's argument in any way . . . any habeas relief ordered by the Court would necessarily be directed to the San Francisco [Field] [O]ffice, which is within the Northern District."); *Ameen v. Jennings*, No. 22-cv-00140-WHO, 2022 WL 1157900, at *4 (N.D. Cal. Apr. 19, 2022) (holding that Polly Kaiser, "ICE Acting Field Director Officer of the regional office that controls the independent contractor GSA, is the ultimate 'custodian' of Ameen, making San Francisco the appropriate jurisdiction in which to file this Petition."). Further, in *Saravia v. Sessions*, 280 F.

Supp. 3d 1168, 1185 (N.D. Cal. 2017), *aff'd sub nom. Saravia for A.H. v. Sessions*, 905 F.3d 1137 (9th Cir. 2018), the court held that "a petitioner held in federal detention in a non-federal facility pursuant to a contract should sue the federal official most directly responsible for overseeing that contract facility when seeking a habeas writ." Numerous cases in this district have cited *Saravia* in holding that the FOD of the San Francisco Field Office is the proper respondent in Section 2241 habeas petitions filed by noncitizens detained in facilities located in the Eastern District. *See, e.g., Hilario Pankim*, 2020 WL 2542022, at *4-5; *Domingo*, 2020 WL 5798238, at *2; *Montoya Echeverria v. Barr*, No. 20-CV-02917-JSC, 2020 WL 2759731, at *3 (N.D. Cal. May 27, 2020); *Singh v. Barr*, No. 20-CV-02346-VKD, 2020 WL 2512410, at *4 (N.D. Cal. May 15, 2020); *Ortuno v. Jennings*, No. 20-CV-02064-MMC, 2020 WL 2218965, at *2 (N.D. Cal. May 7, 2020), *appeal dismissed sub nom. Lavrus v. Jennings*, No. 20-16302, 2020 WL 7873088 (9th Cir. Nov. 18, 2020); *Perera v. Jennings*, No. 21-CV-04136-BLF, 2021 WL 2400981, at *2 (N.D. Cal. June 11, 2021).

The court agrees with the reasoning of the foregoing cases. Respondents submit evidence that FOD Kaiser is responsible for the management and direction of all enforcement and removal operations within the boundaries of the "San Francisco Area of Responsibility" and that she has ultimate control over GSA, where Petitioner is detained. As Kaiser has the legal authority to provide the relief Petitioner seeks, she is a proper respondent. Given her presence in this district, the Northern District is the proper forum for the petition. Respondents' motion to dismiss is denied.

**III.   MERITS OF THE PETITION**

   **A.   Legal Framework for Entitlement to a Bond Hearing**

The INA provides a "complex statutory framework of detention authority" codified at 8 U.S.C. §§ 1226 and 1231. *Prieto-Romero v. Clark*, 534 F.3d 1053, 1057 (9th Cir. 2008). Where a noncitizen falls within the statutory scheme "can affect whether his detention is mandatory or discretionary, as well as the kind of review process available to him if he wishes to contest the necessity of his detention." *Id.* In general, section 1226(a) governs detention during the pendency of a noncitizen's removal decision, and section 1231 governs detention following the issuance of a

final removal order.

Section 1226(a) provides the Attorney General with discretionary authority to arrest and detain a noncitizen "pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a); *Prieto-Romero*, 534 F.3d at 1057. A noncitizen detained pursuant to section 1226(a) can appeal ICE's initial custody determination to an immigration judge, who is authorized to "release the alien, and determine the amount of bond, if any, under which the respondent may be released." 8 C.F.R. § 1236.1(d)(1); *see also* 8 C.F.R. § 1003.19(a) (granting immigration judges jurisdiction to review custody and bond determinations). By contrast, section 1226(c) mandates detention for noncitizens who have committed certain criminal offenses. 8 U.S.C. § 1226(c). A noncitizen subject to mandatory detention under section 1226(c) can only be released for witness protection purposes and if the noncitizen "will not pose a danger to the safety of other persons or of property and is likely to appear for any scheduled proceeding." 8 U.S.C. § 1226(c)(2).

The Supreme Court and the Ninth Circuit have long "grappled in piece-meal fashion with whether the various immigration detention statutes may authorize indefinite or prolonged detention of detainees and, if so, may do so without providing a bond hearing." *Rodriguez v. Hayes* ("*Rodriguez I*"), 591 F.3d 1105, 1114 (9th Cir. 2010). In 2015, the Ninth Circuit considered the procedural protections available to noncitizens detained under 8 U.S.C. §§ 1225(b) and 1226(c). *See Rodriguez v. Robbins* ("*Rodriguez III*"), 804 F.3d 1060 (9th Cir. 2015), *reversed by Jennings v. Rodriguez*, 138 S. Ct. 830 (2018). In *Rodriguez III*, a certified class of noncitizens challenged their prolonged detentions pursuant to 8 U.S.C. §§ 1225(b), 1226(a), 1226(c), and 1231(a) without the provision of individualized bond hearings.[2] 804 F.3d at 1065. Following the

---

[2] Section 1225(b) "applies to 'applicants for admission' who are stopped at the border or a port of entry, or who are 'present in the United States' but 'ha[ve] not been admitted.'" *Rodriguez III*, 804 F.3d at 1081 (quoting 8 U.S.C. § 1225(a)(1)). "The statute provides that asylum seekers 'shall be detained pending a final determination of credible fear of persecution and, if found not to have such a fear, until removed.'" *Id.* (quoting 8 U.S.C. § 1225(b)(1)(B)(iii)(IV)). As to all other such applicants for admission, the statute provides for mandatory detention "if the examining immigration officer determines that [the individuals] seeking admission [are] not clearly and beyond a doubt entitled to be admitted." 8 U.S.C. § 1225(b)(2)(A).

As discussed above, 8 U.S.C. § 1226(c) "requires that the Attorney General detain any non-

entry of a preliminary injunction, which was affirmed on appeal, *see Rodriguez v. Robbins* ("*Rodriguez II*"), 715 F.3d 1127 (9th Cir. 2013), the district court granted summary judgment to the class and entered a permanent injunction requiring the government to provide a bond hearing to any class member subject to detention longer than six months. 804 F.3d at 1065. The government was ordered to provide each detainee with a bond hearing by his or her 195th day of detention, with such hearings occurring automatically after notice. *Id.* at 1072. The district court also required the government to prove by clear and convincing evidence that the detainee was a flight risk or a danger to the community in order to justify the denial of bond. *Id.* at 1071. The government appealed from the entry of the permanent injunction, and the class cross-appealed the district court's denial of certain procedural requirements for bond hearings. Id. at 1072-73.

In relevant part, the Ninth Circuit court affirmed summary judgment and the entry of the permanent injunction as to the section 1226(c), 1225(b), and 1226(a) subclasses. Relying on the canon of constitutional avoidance, the court construed sections 1225(b) and 1226(c) as imposing a six-month time limit on detention, after which the government may continue detention only under the authority of section 1226(a). *Id.* at 1079, 1082. The court re-affirmed its decision in *Casas* that a noncitizen "subjected to prolonged detention under § 1226(a) is entitled to a hearing to establish whether continued detention is necessary because he would pose a danger to the community or a flight risk upon release." *Id.* at 1085 (citing *Casas*, 535 F.3d at 949-52). The court thereby affirmed the district court's permanent injunction requiring the government to hold bond hearings every six months for noncitizens detained pursuant to sections 1226(c), 1225(b), and 1226(a). *Id.* at 1090. The court also affirmed the requirement that the government "prove by clear and convincing evidence that an alien is a flight risk or a danger to the community to justify

---

citizen who is inadmissible or deportable because of his criminal history upon that person's release from imprisonment, pending proceedings to remove him from the United States." *Rodriguez III*, 804 F.3d at 1078, n.8. Detention under section 1226(c) is mandatory and individuals detained under that section may be released only if the government deems it "necessary" for witness protection purposes. *Id.* at 1078 (citing 8 U.S.C. § 1226(c)(2)).

Section 1226(a) provides that a noncitizen "may be arrested and detained pending a decision on whether the alien is to be removed from the United States." Section 1231(a) governs detention of noncitizens following issuance of a final removal order.

10

denial of bond at a *Casas* hearing." *Id.* at 1087 (quoting *Rodriguez II*, 715 F.3d at 1135 (quoting *Singh*, 638 F.3d at 1203)).

The Supreme Court reversed *Rodriguez III* in *Jennings*. The Court found that the Ninth Circuit had misapplied the canon of constitutional avoidance as to sections 1225(b), 1226(c), and 1226(a), and determined that "its interpretations of the three provisions at issue . . . are implausible." 138 S.Ct. at 842. As to section 1225(b), which "applies primarily to aliens seeking entry into the United States," the Court noted that the statute divides applicants into two categories: section 1225(b)(1) provides that certain noncitizens claiming a credible fear of persecution "shall be detained for further consideration of the application for asylum," while section 1225(b)(2) provides that noncitizens who fall within the scope of that provision "shall be detained for a [removal] proceeding." *Id.* (emphasis added) (quoting 8 U.S.C. §§ 1225(b)(1)(B)(ii), 1225(b)(2)(A)). The Court found that "[r]ead most naturally, §§ 1225(b)(1) and (b)(2) mandate detention of applicants for admission until certain proceedings have concluded." *Id.* The Court rejected the argument that those provisions contain an implicit six-month limit on the length of detention, observing that "nothing in the statutory text imposes any limit on the length of detention" or "even hints that those provisions restrict detention after six months." *Id.* at 842, 843. As to the canon of constitutional avoidance, the Court held that "[s]potting a constitutional issue does not give a court the authority to rewrite a statute as it pleases . . . [i]nstead, the canon permits a court to 'choos[e] between competing plausible interpretations of a statutory text.'" *Id.* at 843. The Court concluded that sections 1225(b)(1) are 1225(b)(1) are not ambiguous, and that "neither provision can reasonably be read to limit detention to six months." *Id.* at 843-844 (contrasting section 1225(b), which provides that noncitizens "shall be detained" for further proceedings, with section 1231(a)(6), which provides that noncitizens "may be detained" after the completion of the removal period).

Similarly, the Court held that section 1226(c), which applies to noncitizens already present in the United States, could not plausibly be construed to include an implicit six-month time limit on the length of mandatory detention. *Id.* at 846-47. As to section 1226(a), the Court noted that "[f]ederal regulations provide that [noncitizens] detained under § 1226(a) receive bond hearings at

11

the outset of detention." *Id*. at 847. The Court held that "[n]othing in § 1226(a)'s text . . . supports the imposition" of the procedural protections ordered by the Ninth Circuit—"namely, periodic bond hearings every six months in which the Attorney General must prove by clear and convincing evidence that the alien's continued detention is necessary." *Id.*

*Jennings* only entertained statutory challenges to the INA's detention scheme and remanded the question of whether prolonged detention without an individualized bond hearing violates the due process clause of the Fifth Amendment. Upon remand, the Ninth Circuit stated its "grave doubts that any statute that allows for arbitrary prolonged detention without any process is constitutional" and remanded the issue to the district court to consider it in the first instance. *Rodriguez v. Marin* ("*Rodriguez IV*"), 909 F.3d 252, 256 (9th Cir. 2018).

**B.     Discussion**

The parties do not dispute that Petitioner is detained pursuant to the government's mandatory detention authority under section 1226(c). It is also undisputed that Petitioner has been in custody for over fourteen months without having been afforded a bond hearing. Petitioner argues that his continued detention without such a hearing violates his Fifth Amendment due process rights. He contends that due process requires that he be given an individualized bond hearing at which the government bears the burden of establishing by clear and convincing evidence that he presents a risk of flight or danger to justify his continued detention.

Respondents reply by arguing that Petitioner's detention "falls within the scope of the detention that the Supreme Court has upheld as constitutional." MTD/Return 31.

This court has previously observed that since *Jennings*, "there remains 'a dearth of guidance regarding the point at which an individual's continued mandatory detention under Section 1226(c) becomes unconstitutional.'" *Bent v. Barr*, No. 19-CV-06123-DMR, 2020 WL 1677332, at *7 (N.D. Cal. Apr. 6, 2020) (quoting *Gonzalez v. Bonnar*, No. 18-cv-05321-JSC, 2019 WL 330906, at *3 (N.D. Cal. Jan. 25, 2019)). One court in this district has held that detainees are constitutionally entitled to individualized bond hearings after six months, at which point their detention has become prolonged. *Rodriguez v. Nielsen*, No. 18-CV-04187-TSH, 2019 WL 7491555, at *6 (N.D. Cal. Jan. 7, 2019). Other courts have held that there is no bright-line

rule for the duration at which detention becomes constitutionally impermissible. *See, e.g.*, *Gonzalez*, 2019 WL 330906, at *2; *Ramirez v. Sessions*, No. 18-CV-05188-SVK, 2019 WL 11005487, at *6 (N.D. Cal. Jan. 30, 2019).

Absent controlling authority establishing a bright-line rule for a due process right to receive periodic bond hearings, the court finds that it is appropriate to conduct an individualized due process analysis under *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976), in which the Supreme Court held that "[t]he fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." *See Soto v. Sessions*, No. 18-cv-02891-EMC, 2018 WL 3619727, at *3 (N.D. Cal. July 30, 2018) (applying *Mathews* factors to a habeas petitioner's due process claims); *Lopez Reyes v. Bonnar*, 362 F. Supp. 3d 762, 775 (N.D. Cal. 2019) (same); *De Paz Sales v. Barr*, No. 19-cv-04148-KAW, 2019 WL 4751894, at *7 (N.D. Cal. Sept. 30, 2019) (same); *Jimenez v. Wolf*, No. 19-CV-07996-NC, 2020 WL 510347, at *3 (N.D. Cal. Jan. 30, 2020) (same), *appeal dismissed*, No. 20-15533, 2020 WL 9182700 (9th Cir. Oct. 20, 2020).[3] Under *Mathews*, "[d]ue process is flexible and calls for such procedural protections as the particular situation demands." 424 U.S. at 334. The three-part *Mathews* test requires courts to consider "(1) the private interest affected, (2) the government's interest, and (3) the value added by alternative procedural safeguards to what has already been provided in the particular situation before the court." *Soto*, 2018 WL 3619727, at *3 (citing *Mathews*, 424 U.S. at 334-35).

The first factor, Petitioner's interest, is straightforward. Courts have held that there is a strong private interest based on the duration of the detention. *De Paz Sales*, 2019 WL 4751894, at *7 (finding a strong private interest where the petitioner "risks continued detention absent a bond hearing"). "[L]iberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *Rodriguez IV*, 909 F.3d at 256-57 (quoting *United States v. Salerno*, 481 U.S. 739, 755 (1987)). In this case, Petitioner has been detained for over fourteen months without a bond hearing, and there is no reasonably certain end to his detention. This period of detention leans heavily toward finding a strong private interest at stake. *Lopez Reyes*, 362 F. Supp. 3d at

---

[3] Courts have applied *Mathews* in evaluating constitutional challenges to detentions under both 1226(a) and 1226(c). *See Gonzalez*, 2019 WL 330906, at *2-3; *Jimenez*, 2020 WL 510347, at *3.

776 (finding a strong private interest where the petitioner had been detained 22 months and received his last bond hearing 16 months prior); *Jimenez*, 2020 WL 510347, at *3 (finding petitioner "undoubtedly has a strong liberty interest to be free from arbitrary or unreasonable imprisonment" where he had been detained for one year without a bond hearing). Respondents do not meaningfully dispute that Petitioner has a strong private interest. Instead, they assert that Petitioner has extended the length of his removal proceedings by requesting three continuances and moving unsuccessfully to terminate proceedings. [*See* Docket No. 15 (Gilbert Decl., Jun. 13, 2022) ¶¶ 11-13, 15.] The court declines to fault Petitioner for these delays, which counsel argues were outside of his control. Traverse 21. *See Masood v. Barr*, No. 19-cv-07623-JD, 2020 WL 95633, at *3 (N.D. Cal. Jan. 8, 2020) ("it ill suits the United States to suggest that [petitioner] could shorten his detention by giving up [his appeal] rights and abandoning his asylum application."). Accordingly, the court finds that the first *Mathews* factor weighs in Petitioner's favor.

The second factor addresses the government's interest. Respondents argue that "the government has a strong interest in enforcing the immigration laws as enacted by Congress and in ensuring that lawfully issued removal orders are promptly executed." MTD/Return 35. Here, Petitioner is not currently subject to a final removal order that the government could "promptly execute[ ]." Respondents also appear to suggest that the government has a strong interest in ensuring Petitioner's presence during the pendency of the removal proceedings. *See id*. However, "the governmental issue at stake in [these proceedings] is the ability to detain Petitioner *without providing him with [a] bond hearing*, not whether the government may continue to detain him." *Lopez Reyes*, 362 F. Supp. 3d at 777 (emphasis in original). Respondents do not explain how providing Petitioner with a bond hearing after fourteen months of detention would undermine its interest in enforcing immigration laws and effecting removal. "After all, the purpose of a bond hearing is to inquire whether the [noncitizen] represents a flight risk or danger to the community." *Jimenez*, 2020 WL 510347, at *3 (observing that argument that petitioner's "continued detention remains constitutional because it serves an immigration purpose: to assure his presence at removal . . . loses sight of what is at stake. [Petitioner] seeks a bond hearing, not unqualified release.").

14

Respondents do not argue that there are any costs associated with providing a bond hearing. Therefore, this factor is neutral at best.

The final factor looks at the value of additional safeguards. *See Soto*, 2018 WL 3619727, at *3. In this case, Petitioner has not received any bond hearing during his fourteen-month detention. Accordingly, the value of additional procedural safeguards—i.e., a bond hearing—is high, because "Respondents have provided virtually no procedural safeguards at all." *Jimenez*, 2020 WL 510347, at *3.

Having considered and weighed the *Mathews* factors, the court concludes that Petitioner's continued detention without a bond hearing violates his due process rights under the Fifth Amendment. Due process requires Respondents to provide Petitioner with a bond hearing. At the hearing, the government must justify his continued detention by establishing by clear and convincing evidence that he is a flight risk or a danger to the community pursuant to *Singh*, 638 F.3d at 1203. *See id*. at 1204 (observing that the "Supreme Court has repeatedly reaffirmed the principle that 'due process places a heightened burden of proof on the State in civil proceedings in which the 'individual interests at stake . . . are both particularly important and more substantial than mere loss of money.'" (quoting *Cooper v. Oklahoma*, 517 U.S. 348, 363 (1996)). As the court does not have an adequate basis to evaluate whether Petitioner is a flight risk or a danger to the community, he is not entitled to immediate release from ICE custody. That portion of his petition is denied.

**IV. TRO**

In his motion for a TRO, Petitioner seeks the same relief that he requests in his petition; namely, an order requiring the government to provide him with a bond hearing or immediate release from custody. His motion for a TRO is therefore denied as moot.

**V. CONCLUSION**

For the foregoing reasons, the petition for a writ of habeas corpus under 28 U.S.C. § 2241 is granted in part and denied in part. By December 5, 2022, Petitioner must be provided with a bond hearing before an immigration judge. At that hearing, DHS must establish by clear and convincing evidence that Petitioner is a flight risk or a danger to the community in order to

continue his detention.

**IT IS SO ORDERED.**

Dated: November 18, 2022



Donna M. Ryu
United States Magistrate Judge

16